## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **JOHNNY PIERCE, TDCJ #02396101,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | **SA-22-CV-00147-XR** |
| **v.** | § | |
| | § | |
| **ROY RODRIGUEZ, Comal County** | § | |
| **Sheriff's Office Corrections Officer, and** | § | |
| **OFFICER JAIME ANDRADE, Comal** | § | |
| **County Sheriff's Office Corrections Officer,** | § | |
| | § | |
| **Defendants.** | § | |

## ORDER

Before the Court are *pro se* Plaintiff Johnny Pierce's ("Pierce") 42 U.S.C. § 1983 Amended Civil Rights Complaint and the Motion for Summary Judgment filed by Defendants Comal County Sheriff's Office Corrections Officers Roy Rodriguez and Jaime Andrade (collectively "Defendants"). (ECF Nos. 10, 28). Upon review, the Court orders Defendants' motion for summary judgment **GRANTED**. (ECF No. 28).

### PROCEDURAL BACKGROUND

The undisputed summary judgment evidence shows Pierce was arrested and booked into the Comal County Jail ("CCJ") based on two violations of conditions of bond regarding two possession of controlled substance charges. (ECF No. 28, Exh. A, p. 5; Exh. A–1). While confined, Pierce was served with additional arrest warrants for use of a wrong color signal device on his vehicle, possession of drug paraphernalia, possession of a controlled substance, violation of a condition of bond related to the possession charge, and criminal trespass. (*Id.*). During his incarceration in the CCJ, Pierce was "disciplined on numerous occasions for various offenses[.]"

(ECF No. 28, Exh. A, p. 5). Records from the Texas Department of Criminal Justice ("TDCJ") show Pierce is currently confined in the Polunsky Unit based on his Comal County conviction for three counts of possession of a controlled substance. *See* Texas Department of Criminal Justice Inmate Search (last visited July 26, 2023).

While confined in the CCJ, Pierce filed this § 1983 action against Comal County, the CCJ, and Comal County Sheriff's Office Corrections Officers Roy Rodriguez ("C.O. Rodriguez") and Jaime Andrade ("C.O. Andrade"). (ECF No. 1). Upon review, this Court rendered a Show Cause Order, pointing out deficiencies in the original Complaint. (ECF No. 9). In response, Pierce filed his Amended Complaint, which is the live pleading in this case. (ECF No. 10). Therein, Pierce omitted his previous claims against Comal County and the CCJ. (*Id.*). Accordingly, those entities have been terminated from this matter, leaving only Pierce's claims against C.O. Rodriguez and C.O. Andrade. (*Id.*).

As to C.O. Rodriguez and C.O. Andrade, Pierce alleges each used excessive force against him in separate incidents. (*Id.*). Pierce contends that on December 13, 2021, C.O. Rodriguez used excessive force against him, injuring his elbow and shoulder. (*Id.*). He contends C.O. Andrade used excessive force against him on January 8, 2022, further injuring his elbow and shoulder. (*Id.*). Pierce claims that in both incidents he was fully compliant, negating any need for the use of force. (*Id.*).

Following review of the Amended Complaint, the Court ordered service on Defendants. (ECF No. 12). In response, they first filed a joint answer and then a joint motion for summary judgment. (ECF Nos. 14, 28). In their motion for summary judgment, Defendants counter Pierce's allegations and contend they are entitled to summary judgment based on qualified immunity. (ECF

No. 28). Pierce did not file a response to Defendants' motion for summary judgment.

STANDARD OF REVIEW

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Funches v. Progressive Tractor & Implement Co., L.L.C.*, 905 F.3d 846, 849 (5th Cir. 2018). Where the nonmovant bears the burden of proof at trial, the summary judgment movant must offer evidence that undermines the nonmovant's claim or point out the absence of evidence supporting essential elements of the nonmovant's claim; the movant may, but need not, negate the elements of the nonmovant's case to prevail on summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990). A complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the movant shows entitlement to judgment as a matter of law, the nonmovant must bring forward *evidence* to create a genuine issue of material fact. *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001). "The *evidence* of the non–movant is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir.), *cert. denied*, 139 S.Ct. 69 (2018) (emphasis added) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Mere allegations in the nonmovant's complaint are not evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). However, verified allegations in an inmate–plaintiff's complaint are deemed competent summary judgment evidence. *See Al–Raid v. Ingle*, 69 F.3d 28, 32 (5th Cir. 1995). Nevertheless, even verified allegations cannot defeat summary judgment if they are simply "conclusory allegations," "unsubstantiated

assertions," or constitute "only a scintilla of evidence." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Hunt v. Pierson*, 730 F. App'x 210, 212 (5th Cir. 2018) (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).

In examining video evidence, the Fifth Circuit has stated it "assign[s] greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." *See Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (citing *Scott v. Harris*, 550 U.S. 372, 381 (2007) (holding that court not rely on plaintiff's description of facts where record discredits such description but should instead consider "the facts in the light depicted by the videotape.")); *see also Waddleton v. Rodriguez*, 750 F. App'x 248, 254 (5th Cir. 2018) (stating that "This court will not adopt facts that are clearly contradicted by the video such as Waddleton's denial that he acted belligerently or resisted the officers.").

When, as here, a defendant properly pleads qualified immunity, the burden shifts to the plaintiff to demonstrate the defendant is not entitled to immunity by showing a violation of an actual constitutional right that was clearly established at the time of the alleged violation. *See Escobar v. Montee*, 895 F.3d 387, 393 (5th Cir. 2018); *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018). Despite this shifting burden, a court must still "view the facts in the light most favorable to the nonmovant." *Darden*, 880 F.3d at 727.

Whether qualified immunity is at issue or not, the Fifth Circuit requires a nonmovant to submit "significant probative evidence" from which the jury could reasonably find for the nonmovant. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). The non–movant's evidence must raise more than some "metaphysical doubt as to the material facts." *Funches*, 905 F.3d at 849. A genuine issue of fact does not exist "if the record taken as a whole

could not lead a rational trier of fact to find for the non–moving party." *Hunt*, 730 F. App'x at 212

(quoting *City of Alexandria v. Brown*, 740 F.3d 339, 350 (5th Cir. 2014)).

ANALYSIS

### A. Factual Background—Alleged Incidents of Excessive Force, Medical Treatment

#### 1. December 13, 2021 Incident

The uncontested summary judgment evidence shows that on the date of the incident a CCJ

corrections officer witnessed Pierce and another inmate fighting in a cell and called for additional

officers. (ECF No. 28, Exh. A–2, p. 6). Upon arrival, one officer saw Pierce "throwing punches at

another inmate," which was also witnessed by C.O. Rodriguez. (*Id.*, pp. 1–2, 5).

C.O. Rodriguez restrained Pierce and placed him against the wall outside the cell. (*Id.*, p. 5). As

the other inmate was escorted out of the cell, Pierce pulled away from C.O. Rodriguez,

aggressively lunging away from the wall and toward the inmate, cursing at him. (*Id.*, pp. 4, 5; Exh.

A–3 at 0:01:05). Several officers had to place Pierce back against the wall where he continued to

curse at the other inmate. (ECF No. 28, Exh. A–3 at 0:01:06–:19). In the incident report, C.O.

Rodriguez stated he then "used the least minimum force to place [Pierce] on the floor to prevent

further altercations." (ECF No. 28, Exh. A–2, p. 5). Two other officers also stated in their reports

that Pierce was placed on the ground for inmate and officer safety. (*Id.*,

pp. 3–4). Pierce was than handcuffed and escorted to another cell. (*Id.*, pp. 3–5). Pierce was treated

by medical personnel for an injury to his hand and released back to officers. (*Id.*, p. 5; Exh. A–5).

5

In his Control of Resistive Suspect Report, C.O. Rodriguez noted Pierce was passively resistant and non–compliant with handcuffing. (ECF No. 28, Exh. A–5). He advised that he used joint manipulation and a leg sweep or trip in response to Pierce's resistance. (*Id.*). The report shows only an injury to Pierce's thumb. (*Id.*). Pierce was later found guilty of fighting at his disciplinary hearing, losing visitation and commissary privileges for two weeks.[1] (ECF No. 26, Exh. A–2, p. 6). Pierce did not file a grievance complaining of excessive force and injury regarding this incident until February 17, 2022.[2] (ECF No. 28, Exh. A–29).

   2. *January 8, 2022 Incident*[3]

In the second incident, which occurred approximately a month later, officers again observed Pierce fighting—this time with two other inmates. (ECF No. 28, Exh. A–8, p. 6). Officers were called to respond. (*Id.*, pp. 2–6). When officers arrived, one of the inmates was removed from the cell while officers spoke with Pierce and the other inmate. (*Id.*, pp. 2–3; Exh. A–9 at 0:01:10). One of the officers ordered Pierce to step out of the cell but Pierce refused. (ECF No. 28, Exh. A–8, pp. 2–3). Once out of the cell, Pierce was ordered to place his hands behind his back but he refused. (ECF No. 28, Exh. A–9 at 0:01:43). Pierce then pulled away from the officer, "threw his arms up," and said "[d]on't f*cking touch me." (ECF No. 28, Exh. A–8 pp. 2–3, 5; Exh. A–9 at 0:01:43–:46). At that point, an officer attempted to pull Pierce's

---

[1] The other inmate involved in the altercation stated the fight started when he attempted to stop Pierce from picking on an older inmate who was housed in the same area. (ECF No. 28, Exh. A–3 at 0:3:13–:20).

[2] Pierce filed a grievance on January 6, 2022. However, that grievance complained of an injury to his arm and a lack of medical attention for the injury. (ECF No. 28, Exh. A–28). Pierce did not reference any incident with officers as causing this injury. (*Id.*).

[3] Although Pierce contends it was during this incident that C.O. Andrade used excessive force against him, there is nothing in the summary judgment evidence identifying C.O. Andrade as one of the officers involved in the incident. However, for purposes of review the Court accepts as true Pierce's contention that C.O. Andrade was one of the officers involved.

arms behind his back. (ECF No. 28, Exh. A–8, p. 2). Pierce turned toward the officer, and "took a fighting stance." (ECF No. 28, Exh. A–8 pp. 2, 5; Exh. A–9 at 0:01:45). Ultimately, officers were able to secure Pierce's hands and began to escort him out of the area. (ECF No. 28, Exh. A–8 pp. 2, 4; Exh. A–9 at 0:01:52–:58). Pierce continued to resist and pull away as he was being escorted out of the area. (ECF No. 28, Exh. A–8 pp. 2, 4–5; Exh. A–9 at 0:01:55–:58). One officer stated Pierce was acting erratically; another described him as "actively resisting." (ECF No. 28, Exh. A–8, pp. 3–4, 5). Based on his continued resistance, and to prevent Pierce from injuring officers or himself, he was placed in a prone position on the ground, his hands were cuffed, and his legs were secured against his buttocks to prevent kicking. (*Id.*, pp. 2, 4–5). Pierce was subsequently assisted to his feet and escorted to a separation cell. (*Id.*, pp. 2–4). Pierce did not complain of any injury but was evaluated by medical personnel who determined he suffered no injuries and no treatment was necessary. (*Id.*, p. 3; Exh. A–10).

In the Control of Resistive Suspect Report, C.O. Rodriguez noted Pierce used "empty hand active resistance" and passive resistance. (ECF No. 28, Exh. A–10). Again, joint manipulation and a leg sweep or trip was used in response to Pierce's resistance. (*Id.*).

Based on the incident, Pierce was charged with a disciplinary infraction and found guilty. (ECF No. 28, Exh. A–8, p. 1; Exh. A–11). This time Pierce lost his visitation and commissary privileges for three weeks. (ECF No. 28, Exh. A–8, p. 1). As with the other incident, Pierce did not file a grievance complaining of excessive force and injury until February 17, 2022. (ECF No. 28, Exh. A–29).

3.   *Other Disciplinary Incidents*

The summary judgment evidence shows numerous other infractions and disciplinary actions involving Pierce during his confinement in the CCJ. (ECF No. 28, Exhs. A–12 through A–25). Five of those incidents involved fighting with other inmates or officers. (ECF No. 28, Exhs. A–12, A–14, A–15, A–18, A–22, A–24).

4.   *Medical Treatment*

Pierce was seen by medical personnel after the December 13, 2021 and January 8, 2022 incidents. (ECF No. 28, Exh. A–2, p. 5; Exh. A–5; Exh. A–8, p. 2; Exh. A–10; Exh. B). When seen on December 13, 2021, Pierce did not complain of arm, elbow, or shoulder pain; rather, his only complaint was that the altercation triggered an asthma attack for which he received treatment. (ECF No. 28, Exh. B, ¶ 6; Exh. B–2, p. 2). He was then released from medical. (ECF No. 28, Exh. B–2, p. 2). As noted above, he was also seen by medical personnel after the January 8, 2022 incident despite no complaints of injury; no injuries were found. (ECF No. 28, Exh. A–8, p. 3; Exh. A–10).

Additionally, a review of all of Pierce's medical service requests from November 30, 2021 through January 18, 2023, show he never complained of, or requested treatment for, elbow or shoulder pain—the injuries he claims to have suffered as a result of the alleged excessive force incidents. (ECF No. 28, Exh. B, ¶ 6). Admittedly, Pierce complained of an unspecified injury to his arm via a grievance filed January 6, 2022. (ECF No. 28, Exh. A–28; Exh. B, ¶ 7); *see, supra* n.2. The grievance was forwarded to medical and Pierce was evaluated January 7, 2022. (ECF No. 28, Exh. B, ¶ 7). When Pierce filed his February 17, 2022 grievance against Defendants claiming injuries to his elbow and shoulder, officials forwarded it to medical. An

8

x–ray was taken of the elbow but the radiological report showed no damage so an x–ray of Pierce's shoulder was ordered. (*Id.*; Exh. B–1). This report showed no damage to Pierce's shoulder. (ECF No. 20, Exh. B, ¶ 7; Exh. B–3).

### B.  Substantive Law

Defendants contend they are entitled to summary judgment based on qualified immunity because Pierce cannot show a violation of his civil rights based on the alleged excessive force incidents described above. (ECF No. 28). Moreover, Defendants argue that even if Pierce's rights were violated, summary judgment based on qualified immunity is still appropriate because Pierce cannot show the rights asserted were clearly established. (*Id.*). Thus, the applicable substantive law in this case, given Pierce's allegations and Defendants' motion for summary judgment, involves the defense of qualified immunity in the context of an excessive force claim. (ECF Nos. 10, 28).

#### 1.  Qualified Immunity

Qualified immunity shields government officials from liability as long as the conduct in questions does not violate clearly established constitutional rights. *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It "is both a defense to liability and a limited entitlement not to stand trial or face the other burdens of litigation." *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)). Qualified immunity "provides ample protections to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). It is a shield from "'undue interference'" with a government official's duties and "'potentially disabling threats of liability.'" *Collie v. Barron*, 747 F. App'x 950, 952 (5th Cir. 2018) (quoting *Harlow*, 457 U.S. at 806). When

resolving questions of qualified immunity, a reviewing court "engage[s] in a two–pronged inquiry." *Tolan v. Cotton*, 572 U.S. 650, 655 (2014) (per curiam). Under the first prong, the Court must determine whether the facts alleged by the plaintiff "make out a violation of a constitutional right." *Darden v. City of Fort Worth, Tex.*, 880 F.3d 722, 727 (5th Cir.), *cert. denied*, ___ U.S. ___, 139 S.Ct. 69 (2018) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)); *Bush v. Strain*, 513 F.3d 492, 500 (5th Cir. 2008). The second prong requires the Court to determine whether the right in question was "clearly established" at the time of the alleged constitutional violation. *Darden*, 880 F.3d at 727; *Bush*, 513 F.3d at 500. This Court has discretion to decide the order in which it analyzes the prongs; however, deciding the prongs in order may be beneficial. *See Tolan*, 572 U.S. at 656; *Darden*, 880 F.3d at 727.

As set out above, a defendant's assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available. *Escobar*, 895 F.3d at 393; *Romero*, 888 F.3d at 176. The plaintiff "must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (citations and internal quotation marks omitted). "Qualified immunity is a complete defense, and [a defendant is] entitled to summary judgment on the basis of qualified immunity unless [the plaintiff] can show triable issues as to whether [the defendant] violated a clearly established right of which a reasonable officer would have been aware." *Brewer v. Hayne*, 860 F.3d 819, 824 (5th Cir. 2017). A plaintiff cannot satisfy his burden with conclusory allegations, speculation, or unsubstantiated assertions of wrongdoing. *See Mitchell v. Mills*, 895 F.3d 365, 370 (5th Cir. 2018).

2.   *Excessive Force*

A pretrial detainee's claim of excessive force is governed by the Fourteenth as opposed to the Eighth Amendment. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1995). "Force against a pretrial detainee is 'excessive' and a violation of the Fourteenth Amendment when the force was objectively unreasonable." *Fairchild v. Coryell Cnty.*, 40 F.4th 359, 362–63 (5th Cir. 2022) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015)). Thus, to defeat qualified immunity and prevail on a Fourteenth Amendment excessive force claim, a pretrial detainee must show the force was "purposely or knowingly used against him" in a manner that was "objectively unreasonable." *Kingsley*, 576 U.S. at 397. To make this showing, the pretrial detainee must show the defendants used force in a matter "'not rationally related to a legitimate nonpunitive governmental purposes'" or that the defendants' actions were "'excessive in relation to that purpose.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 540 (1979)).

Whether defendants' actions are objectively reasonable "'turns on the facts and circumstances of each particular case and various factors may bear on the reasonableness or unreasonableness of the force used.'" *Welsh v. Correct Care Recovery Sols.*, 845 F. App'x 311, 317 (5th Cir. 2021) (quoting *Kingsley*, 576 U.S. at 397). The factors to be considered include, but are not limited to: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the defendant; and (6) whether the plaintiff was actively resisting. *Fairchild*, 40 F.4th at 363 (quoting *Kingsley*, 576 U.S. at 397). Reasonableness must be assessed from the perspective of a reasonable corrections officer on the scene and take into account what he knew at the time,

not based on 20/20 hindsight, and the need to make "split–second judgments" in "circumstances that are tense, uncertain, and rapidly evolving[.]" *Graham v. Connor*, 490 U.S. 386, 397 (1989); *see Fairchild*, 40 F.4th 383. A court must also consider the legitimate interests stemming from jail officials' need to manage the facility, deferring to the officials' policies and practices needed to preserve internal order, discipline, and institutional security. *Kingsley*, 576 U.S. at 397 (citing *Bell*, 441 U.S. at 540). As the Supreme Court has stated, "[e]nsuring security and order at [an] institution is a permissible nonpunitive objective, whether the facility houses pretrial detainees, convicted inmates, or both." *Bell*, 441 U.S. at 561.

### C.   Application of Standard of Review and Substantive Law to Evidence

Pierce's allegations in this matter are terse. (ECF No. 1). He contends C.O. Rodriguez "used excessive force against [him] in the Comal County Jail" "on or about Dec. 13, 2021," severely injuring his elbow and shoulder. (*Id.*). Similarly, he contends C.O. Andrade "used excessive force against [him]," "on or about Jan. 8, 2022," further injuring his elbow and shoulder. (*Id.*). Pierce contends that in both incidents he was "fully complaint." (*Id.*).

Defendants contend Pierce's claims of compliance are belied by the incident reports and body camera footage from each incident, which show aggression, non–compliance, and attempts by Pierce to flee contrary to directives from officers. (ECF No. 28, Exhs. A–2, A–3, A–4, A–9). Defendants contend analysis of the undisputed summary judgment evidence under the *Kingsley* factors show neither use of force was a violation of Pierce's Fourteenth Amendment rights, entitling them to summary judgment based on qualified immunity. (ECF No. 28).

Applying the evidence to the *Kingsley* factors, the Court finds all of the factors weigh in favor of Defendants' use of force in each incident. Relevant to all but the second factor (the extent

of Pierce's injury), and as detailed above, in both incidents Pierce was fighting with other inmates, creating an obviously serious security issue in the CCJ. Pierce disobeyed officers' orders and resisted their efforts to control him. In the first incident, Pierce attempted to lunge at another inmate, pulling away from C.O. Rodriguez and disobeying the order to stay on the wall. In the second incident, Pierce physically pulled away from officers, attempted to evade them, and then assumed a defensive or fighting posture. Defendants could have reasonably perceived in each incident that Pierce posed a threat to other inmates, to officers, and to general security. Despite his aggressive behavior, each time officers did nothing more than place Pierce on the ground and secure him in an effort to end the disruption and ensure officer and inmate safety. Pierce did not contend, and there is no evidence, Defendants' continued to use force after Pierce was secured and order was restored.

Jail officials are justified in using some degree of force to restore discipline when an inmate is uncooperative and refusing legitimate directives. *Williams v. Carter*, No. H-20-0853, 2021 WL 4243571, at *9 (S.D. Tex. Sept. 17, 2021) (quoting *Velazquez v. Baker*, No. 5:20-CV-078-BQ, 2021 WL 812505, at *5 (N.D. Tex. Jan. 28, 2021) (quoting *Gonzales v. Rowe*, No. 5:20-CV-052-BQ, 2020 WL 4811005, at *3 (N.D. Tex. July 27, 2020)). In *Gonzales*, the district court found "some degree of force" by officers was justified where an inmate "refus[ed] to comply with the Officers' repeated orders to lie on the cell's floor" because "[d]isobeying orders poses a threat to the order and security of an institution"). 2020 WL 4811005, at *3 (citing *Minix v. Blevins*, No. 6:06-CV-306, 2007 WL 1217883, at *24 (E.D. Tex. Apr. 23, 2007)). The courts have also recognized that "open defiance of orders plainly poses a threat to the security of the institution, regardless of whether or not the defiance is emanating from within a locked cell." *Rios*

13

*v. McBain*, No. 504-CV-84, 2005 WL 1026192, at *7 (E.D. Tex. Apr. 28, 2005), *report & recommendation adopted*, 2005 WL 1026192 (E.D. Tex. Apr. 28, 2005). Here, a reasonable officer would have been justified in believing that in each incident some use of force was objectively reasonable to due to Pierce's actions and the threat to others and institutional security posed by those actions.

As for the extent of Pierce's injury, the evidence shows the force used by Defendants was no more than necessary for the situations presented, which is the relevant inquiry. *See Noel v. Webre*, 426 F. App'x 247, 249–50 (5th Cir. 2011) (per curiam). Defendants and other officers placed Pierce on the ground and restrained him after he engaged in physical altercations with other inmates, disobeyed order, and resisted officers efforts to restrain him. The evidence establishes the force applied by Defendants in both incidents was done in a good faith effort to restore discipline, not maliciously or sadistically to simply cause harm. *See id.*

As for his actual injury, after the first incident Pierce was treated for an injury to his hand, not his elbow or shoulder, and released. No injury at all was claimed by Pierce or found by medical personnel following the second incident. Pierce provides nothing more than a generic statement that his elbow and shoulder were injured. Notably, according to the only evidence before the Court, Pierce never complained of any injury until January 6, 2022, and that concerned his "arm" and he did not claim this injury was related to the December 13 2021 incident. And when he finally filed a grievance on February 17, 2022, claiming excessive force by Defendants, radiological reports showed no damage to either his elbow or his shoulder. The absence of an injury or at best, a *de minimis* injury strongly indicates the force used was not disproportionate to the need nor

undertaken simply to injure Pierce. *See id.* Thus, on balance, this factor also weighs in favor of Defendants.

In summary, the Court finds Defendants have established entitlement to summary judgment based on evidence supporting the first prong of the qualified immunity inquiry—whether a constitutional violation has been established—because Defendants' use of force in both incidents was objectively reasonably based on the application of the undisputed evidence to the *Kingsley* factors. *See Kingsley*, 576 U.S. at 397. Because Defendants have established as matter of law there was no excessive force in violation of Pierce's Fourteenth Amendment rights, the Court need not inquire into the second prong of the qualified immunity test—whether the constitutional right in questions was clearly established at the time of the alleged violation.

CONCLUSION

Based on the foregoing analysis, the Court finds C.O. Rodriguez and C.O. Andrade are entitled to summary judgment as to Pierce's Fourteenth Amendment excessive force claims. Defendants established their actions in each use of force incident were objectively reasonable, and therefore, Pierce's constitutional rights were not violated, entitling Defendants to qualified immunity.

**IT THEREFORE ORDERED** that C.O. Rodriguez and C.O. Andrade's Motion for Summary Judgment (ECF No. 28) is **GRANTED** and Pierce's claims against them are **DISMISSED**.

**IT IS FURTHER ORDERED** that Pierce shall take nothing in this cause against C.O. Rodriguez and C.O. Andrade.

It is so **ORDERED**.

**SIGNED** this July 31, 2023.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

16